## YOUMANS JEWELRY COMPANY *v.* BLACKSHEAR BANK.

1. The court did not err in admitting evidence tending to establish the custom or usage of banks in handling for collection checks drawn upon banks situated in some other city than that in which the bank receiving the check for collection is located.
2. Under the evidence in the case the court did not err in submitting to the jury the issue as to whether there was an implied contract between the plaintiff and the defendant, exempting the latter from responsibility for neglect upon the part of the agents or correspondents through whom it sought to collect a certain check which had been deposited with it for collection.
3. There was no evidence authorizing the jury to find that there was an express contract between the parties, exempting the defendant bank, which had received of the plaintiff a check upon another bank for collection, from liability for the default or neglect of its agents or correspondents; and the court erred in charging the jury in reference to the effect of such an express contract.

FEBRUARY 20, 1914.

Complaint. Before Judge Parker. Pierce superior court. December 27, 1912.

*J. L. Sweat,* for plaintiff.

*Memory & Summerall,* for defendant.

BECK, J.    The Youmans Jewelry Company, complaining as party plaintiff, against the Blackshear Bank, as party defendant, commenced suit for the recovery of the principal sum of two hundred dollars, besides interest, for the failure of defendant to collect and pay to plaintiff the amount of a certain check given to plaintiff by J. P. Price, on the Bank of Climax, for the sum aforesaid, and indorsed and placed with defendant for collection, because of the alleged negligence of defendant, its bank correspondents and agents; to which said suit defendant filed its answer denying any and all liability on. its part to plaintiff.    Upon the trial the jury returned a verdict for the defendant.    The plaintiff made a motion for a new trial, which was overruled.

In the second ground of the amended motion for a new trial complaint is made that a witness for the defendant was permitted to testify, over objection, that "The custom is, when good banks send to other good banks items for collection, they send it on to other good banks.    It is the custom among good banks, if an item is sent to a Savannah bank, on another point, for the Savannah bank to send it to the other point.    I think this custom is pretty general.    Banks do not usually use the express in making collections on points where there is only one bank; that is my information."    The objection urged to this evidence was that the same was "illegal, irrelevant, and inadmissible for the purpose of establishing an implied contract by the proof of custom, so as thereby to relieve defendant from its liability to plaintiff as fixed by the law."    The movant also excepted to the admission of the following evidence of a witness for the defendant:  "So far as I know, it is the custom of good banks to handle their foreign items through their correspondents.    If a reputable bank had an item on a bank in Thomasville, Georgia, and if the bank had no correspondent there in Thomasville, the usual course for the bank to pursue would be to send the item to some of their correspondents to handle for them.    It would not be the usual course for the bank to send the item direct to Thomasville if they had no correspondent there.    If the bank had a correspondent in Savannah, Georgia, it would be proper to send the item to their Savannah correspondent to handle for them, unless the depositor gave specific instructions concerning the handling of the item.    In answer to your question as to whether or. not it is usual for banks to use express

companies to handle their items in towns where there is only one bank, I will state that so far as I know it is not the custom to do so. I would not think it would be done usually. I have never done so, although I can see how it could be done." This evidence was objected to on the ground that the same was "immaterial, irrelevant, and inadmissible for the purpose of establishing by custom the degree of diligence owed by defendant to plaintiff, so as thereby to relieve it from liability."

1. The evidence set forth in the foregoing statement of facts, which was objected to by the plaintiff, was admissible for the general purpose of showing the custom or usage of banks in reference to handling for collection checks drawn upon banks situated in some other city than that in which the bank receiving the check for collection is located. Upon the trial of cases involving the question as to whether a bank receiving for collection a check upon a bank located elsewhere has been guilty of negligence in making the collection, nothing is more common than the introduction of evidence tending to establish the usage or custom of banks in transacting business of this character. See 2 Michie on Banks and Banking, 1392-1394, and the numerous cases there cited.

2. Several portions of the court's charge to the jury were excepted to. All of them, however, relate to the effect which an express or implied contract between the parties would have towards relieving the defendant from liability in consequence of the negligence of its agents or correspondents in making collections of the checks which had been deposited with it for collection; and it is insisted that there was no evidence of any express or implied agreement between the parties, whereby the defendant would be relieved of the consequences of negligence on the part of its agents or correspondents, and therefore that the charge of the court upon this subject was error. Section 2362 of the Civil Code provides that, "In the absence of a contract, express or implied, to the contrary, a bank taking paper for collection is liable for the defaults of its agents and correspondents to whom the paper has been intrusted for collection." We think there was some evidence which authorized the court to submit to the jury the question as to whether there was an implied contract between the plaintiff and the defendant that the latter should be relieved of responsibility for the neglect or default of its collecting agents. It appears from the evidence

that the plaintiff did not live in the city of Blackshear, where the defendant bank is located, but the bank, upon receipt of this check deposited for collection, acknowledged the receipt of the same by a card, upon the margin of which was printed the following: "This bank assumes no responsibility for any loss in the mail or for any neglect or default of collecting agents." While the receipt of this card by the plaintiff, containing the words printed thereon which we have just quoted, and his failure to object within a reasonable time to the bank's taking the paper for collection upon such terms, might not be sufficient to raise an implied assent to the stipulations upon the card, the case becomes somewhat different when it is made to appear from the evidence that, upon a score or more occasions prior to the transaction in question here, the same plaintiff had made deposits with this bank and received in every instance in return a card containing the words quoted above upon the margin thereof; and these transactions had continued through several months. Under this state of facts we think the court did not err in submitting to the jury the question as to whether there was an implied contract between the parties, exempting the defendant from responsibility for the default of its agents or correspondents. This case differs from that of *Augusta Factory* v. *Mente,* 132 *Ga.* 503 (64 S. E. 553). In that case, where there was a written contract between the parties, it was held that this was not modified or changed by the fact that on letter-heads used in correspondence between the parties, through which the contract was made, was certain printed matter, including, among other things, a statement that "All agreements are contingent upon strikes, accidents, and other delays beyond our control."

3. But the court went further in this case than in submitting the question as to whether there was an implied contract between the plaintiff and the defendant, and instructed them as to the effect of an express or implied contract, using the following language: "I charge you, if there was no express contract between the plaintiff and the defendant in this case, that you are to look at the facts and circumstances in this case and see whether or not there was an implied contract between the parties." Then, after charging so as to instruct the jury as to the effect of an implied contract, and giving a definition of an implied contract, the court added: "I have already charged you that if there is an express

or implied contract that the bank taking the paper for collection is not to be liable for the default or neglect of its agents or correspondents, then, if such bank itself exercised due diligence, it will not be liable even though its agents or correspondents are negligent." There was no evidence in the record of an express contract, and submitting this as an issue to the jury, in the absence of any evidence whatever of an express contract exempting the defendant from liability for the default or neglect of its agents or correspondents, was error requiring the grant of a new trial.

*Judgment reversed. All the Justices concur.*